[No. 7091. Decided April 25, 1908.]

LOUIS G. HEYBROOK, *Respondent*, v. INDEX LUMBER COMPANY *et al.*, *Appellants*.[1]

BOUNDARIES—CORNERS—CALLS—ESTABLISHMENT. Where the quarter section corners on the north and south sides of a section are in place, the dividing line between the east and west halves is a straight line between the said corners, and not an adopted line run on the magnetic variation given by the government surveyor's field notes.

SAME—LOST CORNERS. Where a quarter corner is lost, it must be located half way between the section corners.

TRESSPASS—CASUAL CHARACTER—CUTTING TIMBER. Where a boundary line between two quarter section corners is in dispute, a land owner who adopts a line run on the magnetic variation called for in the field notes, without resorting to a proper method for determining the true line, is guilty of voluntary and not a casual or involuntary trespass, if he cuts timber on the adjoining tract.

SAME—JOINT TRESPASS—PARTIES—JOINDER. Where a timber company and a mill company were both owned and managed by the same individuals and are practically one concern and both were interested in the business of the removal of timber constituting a trespass, they may be joined in one action for damages for a joint trespass.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered June 8, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for trespass. Affirmed.

[1]Reported in 95 Pac. 324.

*Brownell . & Coleman* (*Francis H. Brownell*, of counsel), for appellants.

*Cooley & Horan*, for respondent.

Per Curiam.—The respondent is the owner of forty acres of timber land described as the west half of the southeast quarter of section twenty, in township twenty-seven, north, of range ten, east of the Willamette Meridian, situated in Snohomish county, Washington. The appellant, H. J. Miller Lumber Company, owns the southwest quarter of the same section. In 1905 the appellant logged off its quarter section, and in so doing trespassed, so the respondent claimed, upon his land, cutting therefrom twenty-three trees, containing some 111,857 feet of saw timber. The trees after being cut were taken to the mill of the appellant Index Lumber Company and there sawed into lumber, which lumber the appellants afterwards appropriated to their own use. The respondent thereupon brought this action to recover the treble value of the trees, alleging that the trespass was not casual or involuntary, but was made at a time when the appellants had probable cause to believe that the land on which the trespass was committed was the property of the respondent. The cause was tried in the court below without a jury, and resulted in a finding and judgment for the respondent in the sum of $419.46, being the treble value of the timber the court found to have been taken. This appeal is prosecuted from the judgment so entered.

The questions presented by the records are the following: (1) Was there in reality any trespass; (2) if there was a trespass, was the trespass casual or involuntary; and (3) was there such a joint action between the two defendants as to render them both liable for the trespass. We think the trial court correctly answered each of these questions. The quarter section corners on the north and south sides of the section in which the lands of the parties lay were in place. The dividing line between their lands was a straight line run

between these two corners. Instead of adopting this line the appellants adopted a line run on a magnetic variation of twenty-three and one-quarter degrees, because the United States government surveyor had given this as the variation of the magnetic needle when surveying the exterior lines of the section. But this variation cannot control over the fixed monuments. The true corner is always where the United States surveyor establishes it, whether this point coincides with the other data given or not.

It is said, however, that the corner taken to be the quarter section corner on the north side of the section was not the corner established by the United States government surveyor, and for that reason the appellants had a right to resort to the magnetic variation to determine the true line. But if this contention were true in fact, the rule contended for would not follow. If the corner on the north was actually lost, the line through the section should have been run from the known quarter corner to a post on the north line half way between the section corners, and this regardless of the magnetic variation reported by the government surveyor. We think, however, that the evidence fairly establishes the fact that the corner found on the north side of the section was the true quarter section corner, or, at least, a corner set at the place where the original government corner was established.

On the second question, we think the evidence justifies the court's findings to the effect that the trespass was not casual or involuntary. There was a dispute between the parties from the very start over the location of this line, and the appellants, instead of resorting to some proper method for determining the true line, adopted an arbitrary standard not sanctioned by usage or law, and cut up to the line so established regardless of the protests of the respondent. Under these circumstances it is too much to claim that the trespass was casual or involuntary.

On the last question the evidence shows that the two appellants are practically one concern; that the same individuals

who own and manage the one also own and manage the other, and that the appellants were both interested in the business of removing the timber. There was, therefore, sufficient evidence on which to find a joint trespass.

The judgment is affirmed.