[No. 23835. Department One. July 27, 1932.]

JULIA COPELAND, *Respondent,* v. NORTH COAST TRANSPORTATION COMPANY, *Appellant.*[1]

*Bogle, Bogle & Gates, Sidney A. Moss,* and *Ray Dumett,* for appellant.

*Padden & Moriarty,* for respondent.

STEINERT, J.—This is an action for damages for personal injuries sustained by plaintiff as a result of a collision between an automobile in which she was riding as a guest, and a stage, or bus, owned and operated by defendant. The jury awarded plaintiff a

[1]Reported in 13 P. (2d) 65.

verdict, upon which judgment was subsequently entered after denial of defendant's motion for a new trial. The defendant has appealed.

Two errors are assigned by appellant: first, the court's refusal to withdraw from the jury the question whether the stage was properly equipped with good and sufficient lights; and second, the court's refusal to withdraw from the jury the question of excessive speed on the part of the stage.

The accident occurred on the evening of December 27, 1930, between 6:30 and 7:00 o'clock, on the Pacific highway between Seattle and Tacoma, at a point near the so-called Half-Way House. The highway consists of two strips of concrete pavement, each twenty feet wide, with a four-foot gravel space intervening. The automobile in which respondent was riding, driven by one George Moore, was proceeding north on the easterly strip towards Seattle; the stage was proceeding south along the westerly strip towards Tacoma. The night was dark and the atmosphere impregnated with fog, particularly near the place where the accident occurred, making the view ahead obscure and difficult to travel.

At a point about one hundred and fifty feet south of the Half-Way House, Moore pulled over to his left, crossing the westerly strip of pavement and entering upon private property, where he stopped momentarily to check his tires. He then resumed his journey, making a semi-circular turn in order to regain the highway. At a point about sixty feet south of the Half-Way House, he came to the westerly edge of the pavement, where he stopped and looked and listened attentively for approaching traffic from both directions. At that point, he observed the lights of the Half-Way House about sixty feet away, but neither saw nor heard any traffic coming from the north. He then proceeded

slowly across the westerly strip of pavement and also across the intervening gravel space, at about which time the respondent heard a rumbling noise to the left.

While the automobile was in the act of turning, or straightening out, upon the easterly strip of pavement, it being then about three feet from the easterly edge, the respondent saw spots of light through the fog ahead of her; in a trice, these spots became a mass of lights and almost immediately thereafter the stage with a roar crashed into the Moore car. The stage was then traveling on a portion of the easterly strip of pavement, but was endeavoring to get back onto its own right-hand, or west, side of the road. In swerving to the right, however, it struck the left rear portion of the Moore automobile, shunting or knocking it backwards along the easterly side of the pavement, causing it to turn around several times before coming to a rest. As a result of the impact, the plaintiff was thrown to the pavement, sustaining the injuries for which she sues, and the automobile itself shortly thereafter broke into flames and was burned.

The driver of the stage knew that the particular place was subject to considerable travel, and that vehicles were likely at any time to come from the direction of the Half-Way House, cross the road and turn north. No horn was blown, nor was any warning sign given by him.

According to appellant's evidence, the stage was proceeding at a rate of speed of from twenty to twenty-five miles per hour, was well lighted, and was traveling on its own side of the road; there was also evidence by appellant's witnesses that, although it was somewhat foggy, nevertheless automobiles could be readily discerned for an appreciable distance, one witness placing the distance at about a block; further, that Moore's car shot suddenly out across the road in

front of the stage, making the collision inevitable. The evidence is, of course, in serious conflict, but in view of the errors assigned we must consider it from the angle, and in the light, from and in which the jury had a right to consider it.

We now take up the assignments of error. In its instruction No. 1, which was simply a statement of the issues as tendered by the respondent, the court outlined the allegations of negligence, one of which referred to the insufficiency of lights, and another of which referred to the speed of the stage. This was later followed by instruction No. 4, which in effect recited that, if the jury should find that appellant was negligent in one or more of the particulars alleged in the complaint, and that such negligence was the proximate cause of the injuries, then the verdict should be for the respondent; otherwise for the appellant. Appellant contends that there was no substantial evidence in support of these issues as presented in the foregoing instructions, and that therefore its requested instructions specifically withdrawing them from the jury should have been given.

If the instruction withdrawing the issue of the insufficiency of lights was actually requested, it does not properly appear in the record. No written request for the instruction appears by the transcript to have been filed and made a part of the record, as contemplated by the statute.

The record does show that, after the jury had retired, the defendant took an exception to the court's refusal to give its "additional requested instruction," which counsel then dictated as a part of his exception, and which appears in the statement of facts. This, however, was not sufficient.

Rem. Comp. Stat., § 395, provides that requested instructions must be filed in order to be made a part of

the record, and specifically states that "it shall not be necessary or proper, for any purpose, to embody the same in any bill of exceptions or statement of facts."

The precise question was before this court in *Northern Pacific Railway Company v. Myers-Parr Mill Co.*, 54 Wash. 447, 103 Pac. 453, and was there decided adversely to appellant's contention. The wisdom of the rule is exemplified by this very case, wherein there is a serious dispute between counsel as to whether the instruction was ever properly presented or filed. We must be guided by the record, which in this instance does not disclose that the instruction was filed.

But, assuming that the requested instruction is properly before us, the ultimate result upon this issue is, in our opinion, the same.

It is undoubtedly the rule that it is error to submit to the jury an issue where there is no substantial evidence in support of it and a specific request has been made to withdraw it from the jury's consideration. *Burge v. Anderson*, 164 Wash. 509, 3 P. (2d) 131; *Storm v. Goldberg*, 165 Wash. 36, 4 P. (2d) 1104.

In the present case, however, there was substantial evidence on which to submit the issue of insufficiency of lights to the jury. Before the Moore car started across the westerly strip of pavement, the driver looked and listened attentively, and did not see any stage lights at that time, although he could see the lights of the Half-Way House sixty feet away. Other witnesses testified that the lights of the Half-Way House could be seen for the same distance. It was only after the attention of Moore and the respondent was arrested by the rumbling noise of the stage that they saw its lights, and at that time, according to their testimony, they were over on the easterly strip of the road; in other words, there were no stage-lights visible

when Moore started across the westerly side of the pavement.

One of appellant's own witnesses, who was traveling north, testified that he saw the Moore car stop at the edge of the highway thirty feet in front of him, and that he himself slowed down to let the Moore car turn in ahead, but that he did not see the stage or its lights prior to the collision. Although the testimony of this witness upon this question was not of very great weight, it was, nevertheless, some evidence in support of the respondent's contention that there were not suf-cient lights on the stage under the existing circumstances and conditions. On the other hand, some of the appellant's witnesses testified that the visibility at the time was clear for a considerable distance.

Under the disputed evidence as to the atmospheric conditions, and the precaution taken by Moore before proceeding to cross the pavement, an issue was properly presented on the question whether the stage was equipped with sufficient lights. *Walker v. Butterworth*, 122 Wash. 412, 415, 210 Pac. 813.

In *Lough v. John Davis & Co.*, 35 Wash. 449, 77 Pac. 732, the court said, on page 456:

"It is urged that the court erred in its statement of the issues to the jury, in that it referred to certain averments of the complaint which, it is claimed, are not supported by any evidence. It is appellant's position that the court should either not have referred to such allegations of the complaint, or should have told the jury that there was no evidence upon the subject. Should the court have made the latter statement to the jury, it might have subjected itself to the criticism of commenting upon the evidence. We see no error in stating the issues, as laid in the pleadings, when the jury are instructed that they must base their findings entirely upon evidence. Such was made sufficiently clear to the jury in this case."

90

We think the same admonition was made sufficiently clear in this case.

Appellant's second assignment of error is to the court's refusal to give an instruction withdrawing from the jury the question of excessive speed on the part of the stage. Appellant admits that the question whether the rate of speed was reasonable, under all the surrounding circumstances, was one of fact for the jury; and that it was possible, under the conflicting state of the evidence as to conditions of visibility, that the jury might have found that such speed was excessive. The appellant insists, however, that there was no evidence that the speed of the stage contributed in any way to the accident, and that the issue of excessive speed should therefore have been withdrawn from the jury under its requested instruction. This issue was presented in the same manner, and by the same instructions as was the issue with reference to insufficient lights, which we have already noticed.

In our opinion, there was sufficient evidence to make the matter of speed and its causative effect a question of fact for the jury. There was testimony that the night was dark and the fog heavy; that the stage had left its side of the pavement, had cut across the gravel strip onto the easterly side of the highway, and at the time of the impact was swerving back onto its own side of the road, but too late to avoid the collision. From these facts the jury might well have concluded that, but for the speed of the stage, the collision would not have occurred.

Although appellant's witnesses testified that the stage was traveling at a rate of speed of from twenty to twenty-five miles per hour, there was also evidence of the violence of the impact and its consequent result, as already indicated. The jury had a right to take

this into consideration in determining whether the stage was traveling at an excessive rate of speed under the circumstances. The motor-vehicle law indicates by its provisions that the maximum rate of speed is not always permissible, under any and all circumstances, but must be reasonable and proper under the existing conditions at the place of operation, one of those conditions being freedom from obstruction of the view ahead. That the impact and violence of a collision may be taken into consideration in determining the rate of speed, is well settled. *Osborn v. Seattle,* 142 Wash. 25, 31, 252 Pac. 164; *Day v. Polley,* 147 Wash. 419, 423, 266 Pac. 169; *Harry v. Pratt,* 155 Wash. 552, 556, 285 Pac. 440; *Hunter v. Lincoln Stages, Inc.,* 161 Wash. 634, 297 Pac. 179.

The court adequately instructed the jury, in language proposed by the appellant itself, on the subject of proximate cause, and the appellant was fully protected, in this respect, so far as the instructions were concerned.

We find no error in the court's rulings upon the instructions, and, there being no other error complained of, the judgment is therefore affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.